UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SECURITY NATIONAL INSURANCE
COMPANY,

          Plaintiff,

v.                                                                                    Case No. 22-10555

SALIENT LANDSCAPING, INC., *et al*.,

          Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF SECURITY NATIONAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Pending before the court is Plaintiff Security National Insurance Company's Motion for Summary Judgment (ECF No. 20). Defendant Salient Landscaping, Inc. has not responded, and Defendants Sherry Hutchison and Wellesley Gardens Condominium Association do not oppose (ECF Nos. 28, 32.). Having reviewed the record, the court finds a hearing is not necessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the court will grant the motion.

**I.   BACKGROUND[1]**

On March 21, 2018, Salient, by its owner Chris Fox, applied for general liability insurance coverage from AmTrust North America, an affiliate of Security. (ECF No. 20-4; ECF No.20-5.) The "Underwriting Information" section of the insurance application (the "Application") described Salient's operations as "Basic landscape/lawn care

---

[1] When no response is filed to a summary judgment motion, the district court may rely upon the facts advanced by the movant. *Spurlock v. Whitley*, 79 Fed.Appx. 837, 839 (6th Cir. 2003) (unpublished).

service, maintenance and gardening – mowing, mulching, planting and/or installation" and identified its work as "Landscaping Gardening." (ECF No. 20-4, PageID.419.) Salient responded "No" when asked whether it had performed, supervised, or subcontracted snow removal work in the past 10 years. (ECF No. 20-4, PageID.421.)

The Application included a letter entitled "Loss Warranty," which provided that Fox, among others: (1) warranted and represented that he inquired into Salient, and that, when the Application was executed, he did not know any undisclosed claim, fact, proceeding, circumstance, act, error or omission, which had been or might be expected to give rise to a claim; and (2) understood and accepted that the Policy may be cancelled or rescinded should it be determined that Salient violated its representations and warranties. (*Id.*, PageID.423.)[2] The Application also contained a "WARNING" that "[a]ny person who, with the intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud." (*Id.*, PageID.424.) Fox signed the Application, acknowledging that he had read and understood all the questions asked in the Application and had provided all information required. (*Id.*)

On March 22, 2018, Security issued the Commercial Lines Policy No. NA154294700 (the "Policy") to Salient for the period from March 22, 2018 to March 22, 2019. (ECF No. 20-3.) The Policy required Security to cover and/or defend certain liabilities to bodily injuries or property damages arising out of the conduct of Salient's

---

[2]   "It is understood and agreed that [Amtrust] ha[d] relied upon this letter as being accurate and complete, and such letter [was] material to the risk assumed by [Amtrust] in connection with its understanding and decision to bind coverage for [Salient]." (*Id.*).

2

business. (*Id.*, PageID.383.) The Policy also provided, under "Commercial General Liability Conditions" section:

> 6. Representations
>    By accepting this policy, you agree
>    a. The statement in the Declarations are accurate and complete;
>    b. Those statements are based upon representations you made to us; and
>    c. We have issued this policy in reliance upon your representations.

(*Id.*, PageID.394.)

On or about February 7, 2022, Security was notified of Hutchinson's lawsuit against Wellesley and Salient in Michigan state court arising out of a November 2018 slip-and-fall on ice incident. (ECF Nos. 20-13, 20-14.) This was the first time Security learned of Salient's involvement in snow removal work (ECF No. 20-14, PageID.495.)[3]

## II.  DISCUSSION

### A.  The Declaratory Judgment Act

The Federal Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction. . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201(a). Exercise of jurisdiction under the Act is not mandatory. *Bituminous Casualty Corp. v. J & L Lumber Co., Inc.,* 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 494 (1942)); *see also Travelers Indem. Co. v. Bowling Green Prof'l Assocs.,* 495 F.3d 266, 271 (6th Cir. 2007). Rather,

---

[3]  Subject to a reservation of rights letter disclaiming coverage, Security provided courtesy defense to Salient in Hutchinson's lawsuit (ECF No. 20-6.) That presumably ceased on July 27, 2022, when the state court summarily dismissed all claims against Salient. (ECF No. 29-9.)

3

the Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995) (citations omitted).

The court must consider the following factors in deciding whether the exercise discretion:

    (1)    Whether the declaratory action would settle the controversy;

    (2)    whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

    (3)    whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

    (4)    whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]

        a. whether the underlying factual issues are important to an informed resolution of the case;

        b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

        c.  whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and

    (5)    whether there is an alternative remedy which is better or more effective.

*Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.,* 759 F. App'x 431, 435 (6th Cir. 2018) (citing *W. World Ins. Co.*, 773 F.3d at 758) (alteration in original).

Here, the court is satisfied with Security's explanation as to why it should exercise jurisdiction over this matter, which is unobjected by Defendants. (ECF No. 29). The court is asked only to address whether the Policy should be rescinded because of Salient's misrepresentation in the Application, an issue independent of claims made in

4

the Hutchinson's lawsuit. This federal declaratory action would settle only the legal relations between Security and Defendants, which will not impair or confuse the state court's analysis because (1) Security is not a party to these proceedings and (2) the state court has dismissed all claims against Salient (thereby halting any further involvement by Security in that case). Additionally, there is no evidence that the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata," and the court needs not assume otherwise. *Allstate Ins. Co. v. Cantrell Funeral Home Inc.,* 506 F. Supp 3d 529 (E.D. Mich. 2020) ("[C]ourts generally give that plaintiff the benefit of the doubt that no improper motive fueled the filing of the action.") (citing *Bituminous Casualty Corp.*, 373 F.3d at 814). This declaratory action would not increase the friction between federal and state courts and improperly encroach upon state jurisdiction, as there are different parties and there is no overlapping factual or legal issue. Finally, there has been no suggestion of a better or more effective alternative remedy.

Accordingly, the court will exercise jurisdiction over this action pursuant to the Federal Declaratory Judgment Act.

### B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is

5

appropriate." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble,* 390 F.3d 486, 492 (6th Cir.2004) ("[W]e must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the onus of proof is imposed.'") The court does not weigh the evidence to determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial. *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir.2003). With no response to a dispositive motion, no facts asserted by the moving party are controverted, and the silent party waives the opportunity to assist the court in its analysis; the court will simply proceed to rule upon the motion as presented. *Guarino v. Brookfield Tp. Trustees,* 980 F.2d 399 (6th Cir.1992).

Under Michigan law, "where an insured makes a material misrepresentation in the application for insurance ... the insurer is entitled to rescind the policy and declare it void ab initio." *Am. Guarantee & Liab. Ins. Co. v. Jaques Admiralty L. Firm*, 121 F. App'x 573, 575 (6th Cir. 2005) (citing *Lake States Ins. Co. v. Wilson,* 231 Mich. App. 327 (1998)); *Gen. Am. Life Ins. Co. v. Wojciechowski*, 314 Mich. 275, 281 (1946) ("A false representation in an application for insurance which materially affects the acceptance of

6

the risk entitles the insurer to cancellation as a matter of law."). "Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer." *Lake States Ins.*, 231 Mich. App. at 331; *Am. Guarantee & Liab. Ins. Co.,* 121 F. App'x at 575 ("This proposition holds even in cases of 'innocent misrepresentation,' so long as a party relies upon the misstatement.").

Here, there is no dispute that Salient made a misrepresentation in the March 21, 2018 Application when it denied having performed, supervised, or subcontracted snow removal work in the previous 10 years. Five months earlier, Fox, the signatory in the Application, signed the "SNOW CONTRACT 2017-2022," which allowed Salient to perform snow removal and de-icing services for Wellesley. (ECF No. 20-7, PageID.448-59.) Security has offered unrebutted evidence that the Policy as written would not have been issued but for the misrepresentation of no snow removal operation. (ECF No. 20-5, PageID.428). Also unrefuted is the fact that Security "does not provide liability coverage to its insureds for snow removal operations and no premium was charged for this liability exposure." (*Id.*) This demonstrates the heightened risk that Security wants to avoid from its insureds' snow removal operation. Accordingly, there is no genuine issue of material facts, and Security has the right to rescind the Policy based on the material misrepresentation made by Salient in the March 22, 2018 Application.

With the Policy rescinded, the parties must be returned to their respective pre-contract positions. *See NCMIC Ins. Co. v. Dailey*, No. 267801, 2006 WL 2035597, at *5 (Mich. Ct. App. July 20, 2006). Security must return all premiums paid by Salient to restore it to the pre-contract status quo. *Id.* On the other hand, Security can recover the

"*reasonable* defense costs" expended to defend Salient in Hutchinson's lawsuits. *Id.* at *5-6 (emphasis in original).

### III. CONCLUSION

IT IS ORDERED that "Motion by Plaintiff Security National Insurance Company for Fed. R. Civ. P. 56 Summary Judgment against Defendants" (ECF No. 20) is GRANTED. A separate judgment will be issued.

s/Robert H. Cleland    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: October 26, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 26, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\NTH\Civil\22-10555.SALIENT.MotionforSummaryJudgment.NH.docx